## DIVORCE.

Johnson *v.* Johnson, 14 Wend. 637.

In Ch. 4 Paige, 462.

*Divorce ; Condonation ; Evidence.*

A BILL was filed in this case by the wife for a divorce *a vinculo matrimonii*, on the ground of the adultery of the husband. The adultery complained of in the bill, having been proved to have been *condoned* by the wife by *subsequent cohabitation with full knowledge of the offence*, the question arose whether the acts of *cruelty* by the husband to his wife after the condonation, could so *revive* the act of adultery condoned, as to entitle the wife to a divorce

*a vincu'o* on the ground of those former acts of adultery. Two other questions were made upon the evidence taken before the master. 1. As to the *admissibility* and *competenry* of the evidence of a *physician* to prove that the husband who was his patient, was afflicted with a venereal disease at a period of some years after his marriage, and another question was made as to the effect of the evidence offered to show acts of gross levity, if not criminality on the part of the wife, which was offered before the master on taking proof of the acts of adultery of the husband, upon reference to him after the bill had been taken *pro confesso.* This evidence seems to have been offered to repel the effect of the acts of cruelty relied on, to revive the condoned adultery. Upon the report of the master, the Vice Chancellor of the first circuit granted a divorce *a vinculo.* On appeal to the Chancellor, he *reversed* the decree and ordered the bill to be dismissed.

The Chancellor says: "The testimony of the physician as to what he discovered and was informed of, when he was consulted by the defendant professionally, in 1830, was illegal and improper and ought not to have been received. By the 2d R. Stat. 406, a physician is not only *excused* but *prohibited* as a witness, from disclosing information which he acquired in attending a patient in a professional character. It is expressly stated, that the physician declined making any disclosure as to the disease the defendant was laboring under, until he was compelled by the master to answer. The master mistook the law on this subject, and the testimony being thus obtained in direct violation of this statutory provision, it should be rejected, or laid entirely out of consideration, in deciding whether the adultery charged in the complainant's bill is established by the proofs."

As to the condonation, the Chancellor says : "It is settled in the ecclesiastical courts of England, that condonation is but a conditional forgiveness, and that a repetition of the offence revives the condoned adultery. The same principle was recently recognized in this court, in the case of *Smith* v. *Smith,* 4 Paige, 434. The English courts, however, have gone still further, and have held that to revive a condoned adultery, it was not necessary that the new injury should be of the same nature, but that *cruelty, desertion,* or *other improper*

*conduct of the husband* toward his wife was sufficient for that purpose.

"Upon principle I am satisfied that it would be carrying the doctrine of revival, by subsequent misconduct of the offending party too far, to permit a suit to be instituted for a condoned adultery, unless it was founded upon a subsequent offence of the like character."

"There may be cases, however, in which this court would only have jurisdiction to decree a divorce for the original of. fence, which had been forgiven on the implied condition that it should not be again repeated. In such cases a subsequent offence, though committed out of the jurisdiction of the court, and while the parties were not residents of this state, might be sufficient to revive the condoned adultery so as to entitle the injured party to a divorce for such original offence. And where the *new offence* is of itself sufficient, if *duly* established, to sustain the suit, the complainant might also, as in France and Louisiana, make use of the fact of the former misconduct of the defendant in support or corroboration of the suit for the new offence." And the decree of the Vice Chancellor granting the divorce *a vinc tio* was *reversed* accordingly.

On appeal from this decree of the Chancellor, the Court of Errors *reversed* the decision; but as will be seen from a note of the reporter appended to this case, by a vote which left, as the reporter contends, the question still unsettled, as to the effect of *cruelty* in reviving an adultery after a condonation by cohabitation with full knowledge of the offence.

In the Court of Errors, Savage, Ch. J., delivered the opinion in favor of *reversal*.

1. With regard to the *admissibility* and *competency* of the evidence of the physician before the master, he says : "No objection was made before the master by the *defendant* to the testimony of the physician. From his deposition, it appears that he had been informed that he was bound to testify, but it does not appear that the master decided that question."
"Had the testimony of Dr. S. on this point been objected to by the defendant, he oguht not to have been allowed to testify. The privilege is undoubtedly that of the party and not of the witness. It is like the case of an attorney in that

respect. 1 Ph. Ev. 108; 1 Stark 104. If the *party* waives his privilege, the *witness* may be examined."

2. With regard to the condonation, he observes: "The good sense of the implied condition which accompanies condonation, is that the offending husband shall not only abstain from adultery, but shall in future treat his wife with conjugal kindness. Hence, cruelty is a breach of the condition, and revives adultery, *Worely* v. *Worely*, 1 Haggard, 734." "If condonation is a part of our law, and the implied condition is as I have stated it, (and neither proposition is denied,) then it necessarily follows, that by a breach of that condition, both parties are placed in the same situation as before the condonation. The parties are in *statu quo*, remitted to their former rights and liabilities."

3. As *to the charge of adultery attempted* to be set up against the wife before the master with a view to repel the effect of the cruelty of the husband, Ch. J. Savage, after saying that no evidence sufficient to establish such a charge had been adduced, says: "If the wife had been guilty of adultery, that is a good bar, but evidence of such a fact, before the master, when the husband has suffered the bill to be taken *pro confesso*, is altogether improper ; as much so as a set off would be in an action at law, upon the execution of a writ of inquiry.

"I am of opinion therefore that the adultery (of the husband) was sufficiently proved ; that the condonation was conditional ; that the condition having been broken by both cruelty and lascivious conduct, subsequent to cohabitation, the previous cause of action founded on the husband's adultery was revived ; and consequently that the complainant was entitled to a divorce."

No other opinion was delivered in favor of *reversal ;* but Senator Tracy delivered a brief one in favor of affirmance.

Decree of Chancellor *reversed* 11 to 9.

The note by the reporter to the above case 14 Wend. 648, is as follows :

When the court came to settle the decree in this case, Senator Kemble, who had voted for *reversal*, stated that he had done so for the reason that he was not satisfied that a *condonation* had been established by the proofs taken

in the cause, and that consequently the complainant was entitled to a divorce on the ground of the *adultery* committed by the husband. Having come to this conclusion, he had not examined the question whether under the revised statutes of this state a right of action for the cause of adultery can be *revived* after condonation, by any subsequent misconduct of the husband, other than of the character of the original offence.

The result of this exposition of the views of Senator Kemble, is that the principal question passed upon in this case, must be considered as left open and undecided; the opinion pronounced by the Vice Chancellor, (McCoun,) having the support of the opinion of Chief Justice Savage, concurred in by Mr. Justice Nelson, and nine senators, and the opinion delivered by the Chancellor, having the support of the opinion of Senator Tracy, concurred in by eight senators."

The names respectively are as follows:—

For *reversal,* Chief Justice Savage, Mr. Justice Nelson, and Senators Armstrong, Beckwith, Bishop, Cropsey, Griffin, Kemble, Lacey, McDonald, and Willis.

For *affirmance,* Senators Downing, Edmonds, Edwards, Fisk, Lansing, Mack, Maison, Tracy, and Van Schaick.

☞ We believe the profession generally consider the question very well *settled* by the opinion of Ch. J. Savage.